FLORIDA DEPARTMENT OF
BANKING AND FINANCE,
Petitioner,

v.

BOARD OF GOVERNORS OF the
FEDERAL RESERVE SYSTEM,
Respondent.

FLORIDA BANKERS ASSOCIATION,
and Sun Bank/Palm Beach,
Petitioners,

v.

BOARD OF GOVERNORS OF the
FEDERAL RESERVE SYSTEM,
Respondent.

Nos. 84–3269, 84–3270.

United States Court of Appeals,
Eleventh Circuit.

Oct. 6, 1986.

S. Craig Kiser, Fla. Dept. of Banking & Finance, Carl B. Morstadt, Tallahassee, Fla., for Fla. Dept. of Banking & Finance.

James F. Bell, Jones, Day, Reavis & Pogue, Arthur E. Wilmarth, Jr., Washington, D.C., for Conference of State Bank Supr's.

Richard M. Ashton, James A. Michaels, Office of Gen. Counsel, Bd. of Governors of Federal Reserve System, Washington, D.C., for Bd. of Governors of Federal Reserve System.

Bowman Brown, Shutts & Bowen, Miami, Fla., Vaughn C. Williams, Skadden, Arps, Slate, Meagher & Flom, New York City, for U.S. Trust Corp.

J. Thomas Cardwell, Orlando, Fla., for Fla. Bankers Ass'n and Sun Bank/Palm Beach.

Before RONEY, Chief Judge, TJOFLAT, Circuit Judge, and BROWN *, Senior Circuit Judge.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

BROWN, Senior Circuit Judge:

The Supreme Court, by order of January 30, 1986, — U.S. —, 106 S.Ct. 875, 88 L.Ed.2d 913, vacated our decision in *Florida Department of Banking and Finance v. Board of Governors*, 760 F.2d 1135 (11th Cir.1985), and remanded the case for further consideration in light of its recent decision in *Board of Governors v. Dimension Financial Corp.*, 474 U.S. —, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986). The *Dimension* decision squarely rejects the reasoning behind our vacated opinion and, consequently, we affirm the order of the Board of Governors of the Federal Reserve System (the Board) approving the application of U.S. Trust Corporation to expand the nonbanking activity of its wholly owned "nonbank bank" Florida subsidiary.

### What We Said

The facts of this case are laid out in detail in our earlier opinion, 760 F.2d at 1136–38, and we shall not repeat them here. Suffice it here to say that we reversed the Board's approval of U.S. Trust's application on the grounds that the Board should have used its rulemaking power under § 5(b) of the Bank Holding Company Act (the Act), 12 U.S.C. § 1844(b), to prevent U.S. Trust's evasion of the Douglas Amendment.[1] We based our decision on a lengthy review of the legislative history of the term "bank" as used in the Act. We concluded that Congress twice amended the definition of "bank," once in 1966 and once in 1970, with the intention of exempting first, a small class of savings and industrial banks, and second, one specific institution, the Boston Safe Deposit and Trust Company.[2] But without evidence

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Notwithstanding any other provision of this section, no application (except an application filed as a result of a transaction authorized under section 1823(f) of this title) shall be approved under this section which will permit any bank holding company or any subsidiary thereof to acquire, directly or indirectly, any voting shares of, interest in, or all or substantially all of the assets of any additional bank located outside of the State in which the operations of such bank holding company's banking subsidiaries were principally conducted on July 1, 1966, or the date on which such company became a bank holding company, whichever is later, unless the acquisition of such shares or assets of a State bank of an out-of-State bank holding company is specifically authorized by the statute laws of the State in which such bank is located, by language to that effect and not merely by implication. For the purposes of this section, the State in which the operations of a bank holding company's subsidiaries are principally conducted is that State in which total deposits of all such banking subsidiaries are largest. 12 U.S.C. § 1842(d)(1).

2. The original 1956 Act defined "bank" to include any institution that could obtain a bank charter. Chapter 240, § 2(c), 70 Stat. 133 ("any national banking association or any State bank, savings bank, or trust company"). In 1966, Congress amended the definition to include only those institutions offering "deposits that the depositor has a legal right to withdraw on demand," i.e., checking accounts. 1966 Amendments, Pub.L. No. 89–485, § 3, 80 Stat. 236, 237. In 1970, Congress further amended the Act to remove from the "bank" definition institutions that did not make commercial loans. 1970 Amendments, Pub.L. No. 91–607, § 101(c), 84 Stat. 1760, 1762 (codified at 12 U.S.C. § 1841(c)).

The legislative history of these amendments indicates that in 1966, Congress intended to maintain the traditional separation between banking and the industrial and securities sectors of the economy. *See* S.Rep. No. 1179, 89th Cong., 2d Sess. 7, *reprinted in* 1966 U.S.Code Cong. & Ad.News 2385, 2391 ("the bill redefines 'bank' as an institution that accepts deposits payable on demand (checking accounts), the commonly accepted test of whether an institution is a commercial bank so as to exclude institutions like industrial banks and nondeposit trust companies"). In 1970, Congress again intended to keep separate banking and commerce by eliminating the so-called "one bank loophole." *See* 49 Fed.Reg. 794, 835 (1984). When the 1970 amendments were enacted, the Federal Reserve Chairman testified that the modified definition of bank would have only limited effect, possibly confined to a single institution. *See id.* at 834 (letter of Federal Reserve Chairman Burns to Chairman Sparkman of the Senate Banking and Commerce Committee).

that Congress in its amendments intended to weaken the stricture against interstate banking contained in the Douglas Amendment, we ordered the Board to preserve congressional intent as expressed in the Douglas Amendment and deny U.S. Trust's application.

## What They Said

In *Board of Governors v. Dimension Financial Corp.*, 474 U.S. ——, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986), the Supreme Court held that the Federal Reserve Board exceeded its delegated authority when it expanded the definition of "bank" contained in the Bank Holding Company Act. The Board had enacted "Regulation Y," to bring so-called "nonbank banks" within its regulatory fold by expanding the statutory definition of "bank" to include institutions that offered the functional equivalent of traditional banking services. The Board defined "demand deposits" to include deposits, like NOW accounts, which are "as a matter of practice" payable on demand, 12 C.F.R. § 225.2(a)(1)(A) (1985), and it defined the "making of a commercial loan" to include "the purchase of retail installment loans or commercial paper, certificates of deposit, bankers' acceptances, and similar money market instruments." 12 C.F.R. § 225.2(a)(1)(B) (1985).

The Supreme Court affirmed the Tenth Circuit's invalidation of the Board's amended regulations. It rejected the Board's expanded definition of "demand deposit" as contrary to the Act's express language.[3] It also rejected the Board's expanded defi-nition of "commercial loan" as unsupported by the Act's legislative history.[4] Finally, and most significantly for us, the Court rejected the Board's contention that the amended definitions were necessary to preserve the "plain purpose" of the Act. The Court held that the Board's perception of Congress' legislative will must yield to the unambiguous language of the Act. "The statute may be imperfect, but the Board has no power to correct flaws that it perceives in the statute it is empowered to administer." 474 U.S. at ——, 106 S.Ct. at 689, 88 L.Ed.2d at 701.

## What We Now Say

As we read *Dimension*, our earlier result cannot stand. It is an elementary precept of statutory construction that the definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute. 1A Sutherland, Sutherland on Statutory Construction § 20.08 at 88 (4th ed. 1985). Thus, a depository institution which is not a bank as defined in § 1841(c) is similarly not a bank for purposes of the Douglas Amendment, § 1842(d)(1). If it were a bank, we would be faced with the anomaly of "bank" meaning one thing in one section of the Act and another thing in another.

Because U.S. Trust's Florida subsidiary will not make commercial loans, it is not a "bank" within the meaning of the Act. If, as *Dimension* holds, the Federal Reserve Board is without regulatory jurisdiction to regulate nonbank banks as "banks" under

Nowhere in the legislative history of the Act's changing definition of "bank" is there the slightest hint that Congress considered the effect of the amendments on the Douglas Amendment, nor is there a hint that Congress conceived that a bank holding company could gain an interstate bank charter without state approval.

3. The Act defines "bank" to include institutions which "accept[ ] deposits that the depositor has a legal right to withdraw on demand." 12 U.S.C. § 1841(c). The Board redefined demand deposits to include deposits that were "as a matter of practice" payable on demand. Since the Board's definition conflicted with the statutory language, the Court concluded that the defi-nition was an unreasonable interpretation of the Act. 474 U.S. at ——, 106 S.Ct. at 685–86, 88 L.Ed.2d at 698–99.

4. The Court declared that "commercial loan substitutes," such as the purchase of retail installment loans, commercial paper, certificates of deposit, bankers' acceptances, and similar money market instruments, do not fall within the commonly accepted definition of commercial loans. 474 U.S. at ——, 106 S.Ct. at 686–88, 88 L.Ed.2d at 699–702. The Board's argument to the contrary was undercut by earlier Board decisions distinguishing money market transactions from commercial loans.

the Act, then it is without regulatory jurisdiction to prevent the interstate proliferation of nonbank banks under the Douglas Amendment.

We recognize that, by our holding today, we sanction a result that clearly frustrates the congressional purpose expressed in the Douglas Amendment. *Dimension,* however, ties our hands. When Congress progressively fine-tuned the definition of "bank" in its 1966 and 1970 amendments to the Bank Holding Company Act, it inadvertently created the opportunity for nonbank banks to spring to life. It is Congress, therefore, that must now decide whether it wishes to shepherd the nonbank banks inside the regulatory pale. "If the Bank Holding Company [Act] falls short of providing safeguards desirable or necessary to protect the public interest, that is a problem for Congress, and not the Board or the courts to address." *Dimension,* 474 U.S. at ——, 106 S.Ct. at 689, 88 L.Ed.2d at 702.

The petitioners' challenge to Federal Reserve Board approval of U.S. Trust Corporation's application to charter U.S. Trust Company of Florida is denied.

AFFIRMED.